UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRU-WAY CHURCH OF THE | ) | |
| RISEN CHRIST, INCORPORATED | ) | CASE NO. 12-bk-1498-JAF |
| | ) | CHAPTER 11 |
| _____ Debtor_____ | ) | |

DEBTOR'S DISCLOSURE STATEMENT
FOR DEBTOR'S PLAN OF REORGANIZATION

On March 7, 2012 (the "Petition Date"), Tru-Way Church of the Risen Christ,

Incorporated (the "Debtor") filed a voluntary petition for Reorganization pursuant to Chapter 11

of Title 11, United States Code.  The case was filed in the Middle District of Florida,

Jacksonville Division.  Along with this Disclosure Statement, Debtor has filed a Plan of

Reorganization (the "Plan").

I.  **Summary of Information Contained in the Disclosure Statement**

A.  **Introduction**

The Debtor, as Debtor and Debtor-in-Possession, in connection with the Debtor's Plan of

Reorganization dated August 28, 2012, provides this Disclosure Statement pursuant to 11 U.S.C.

§ 1125 in order to provide adequate information to enable holders of Claims that are impaired

under the Plan to make an informed decision in exercising their right to vote for acceptance or

rejection of the Plan.

The Plan provides for payment of Allowed administrative, priority, secured, and

unsecured claims.  Debtor is a nonprofit organization, and as such, the Debtor will make the

payments under the Plan with funds donated to the Debtor by its congregation and the

surrounding community.  A copy of the Plan is enclosed and is discussed in greater detail in this Disclosure Statement in the section entitled "The Plan of Reorganization."

ALL STATEMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT ARE INCLUDED SOLELY FOR THE PURPOSE OF SOLICITING VOTES WITH RESPECT TO THE PLAN.  WITH RESPECT TO DISPUTES, CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED ACTIONS BETWEEN THE DEBTOR AND THIRD PARTIES, NOTHING CONTAINED IN THE DISCLOSURE STATEMENT SHALL BE CONSTRUED AS AN ADMISSION, WAIVER OR STIPULATION, BUT RATHER SHALL BE TREATED AS STATEMENTS MADE AND INFORMATION PROVIDED IN SETTLEMENT NEGOTIATIONS.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE PLAN INCONSISTENT WITH THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.  NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS FUTURE BUSINESS OPERATIONS, OR THE VALUE OF ITS ASSETS HAVE BEEN AUTHORIZED BY THE DEBTOR OR THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN YOUR ACCEPTANCE WHICH ARE OTHER THAN OR INCONSISTENT WITH THE INFORMATION CONTAINED HEREIN, SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM IN VOTING ON THE PLAN.

**B.  Who May Vote on the Plan**

Under the Bankruptcy Code, impaired classes of claims or equity interests are entitled to vote to accept or reject the Plan.  However, where claims or interests in impaired classes,

2

although impaired, will retain no property and receive no distribution under a plan, they are deemed to have rejected the plan and are therefore not entitled to vote. Only holders of claims or interests in impaired classes which are allowed claims or interests, or claims which are estimated and allowed for voting purposes by order of the Bankruptcy Court, as of the voting deadline are entitled to vote on the plan.

For purposes of this Disclosure Statement, holders of Claims in Classes two (2), three, (3), four (4), five (5), seven (7) and eight (8) are impaired and will receive distributions under the Plan and thus entitled to vote on the Plan.

**C. Voting Instructions**

As a holder of a Claim, your vote on the Plan is important. A ballot to be used for voting to accept or reject the Plan accompanies this Disclosure Statement. After carefully reviewing the Plan and this Disclosure Statement, including all attached exhibits, please indicate your acceptance or rejection of the plan on the ballot and return it in the manner described on the ballot.

BALLOTS MUST BE ACTUALLY RECEIVED BY THE CLERK OF THE COURT ON OR BEFORE 4:30 P.M., EASTERN STANDARD TIME, BY THE DATE INDICATED ON SUCH BALLOT. ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED.

IF YOU HAVE ANY QUESTIONS REGARDING THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CALL WILLIAM B. MCDANIEL, ESQUIRE OF THE BANKRUPTCY LAW FIRM OF LANSING J. ROY, P.A., COUNSEL FOR THE DEBTOR, AT (904) 391-0030.

### D. Acceptance or Rejection of the Plan

Under the Bankruptcy Code, a class of claims is deemed to have accepted a plan if the plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of such class who vote on the plan.

If the Plan is not accepted by all the classes of impaired claims and equity interests, the Plan may still be confirmed by the Bankruptcy Court pursuant to 11 U.S.C. § 1129(b) if the Plan has been accepted by at least one impaired class of claims, and the Bankruptcy Court determines, among other things, that the Plan "does not discriminate unfairly," and is "fair and equitable" with respect to each non-accepting impaired class of claims or interests. If an impaired class of allowed claims or interests rejects the Plan, Debtor may ask the Bankruptcy Court to find that the Plan does not discriminate unfairly and is fair and equitable with respect to each non-accepting impaired class of claims or interests.

### E. Confirmation Hearing

Pursuant to 11 U.S.C. § 1128, the Bankruptcy Court will schedule a confirmation hearing at the United States Bankruptcy Court, Middle District of Florida, United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202. The confirmation hearing will be adjourned from time to time by the Bankruptcy Court by announcement at open court at the confirmation hearing without further notice.

### F. Objections to Confirmation

Any objection to confirmation of the Plan must be in writing, must comply with the Bankruptcy Rules, state the name of the objecting party, state the nature and amount of any claim or equity interest asserted by such objecting party against the Debtor's estate, and must be filed and served as required by the Bankruptcy Court.

## II. Description of the Debtor and Events Causing the Chapter 11 Filing

### A. Introduction

Below is a list of properties the Debtor currently owns, all of which are located in

Jacksonville, Duval County, Florida (collectively, the "Properties"):

| Address | Parcel # | Description | Title |
|---|---|---|---|
| 2297 Edison Ave. | 089712-0000 | 4,400sqft Church used for Worship and Events | "Sanctuary" |
| 0 Edison Ave. | 055437-0000 | 0.13acre Unpaved Parking Lot bordering Sanctuary | "Sanctuary" |
| 2294 Edison Ave. | 089623-0000 | 1,664 Commercial Building across Edison Ave. from Sanctuary used for Sunday School and Events | "Sunday School" |
| 2292 Edison Ave. | 089621-0000 | 4,200sqft Commercial Building connected to Sunday School currently used for Storage | "Sunday School Expansion" |
| 531 Osceola St. | 089588-0000 | 5,600sqft Commercial Building bordering Sunday School used as Community Center and Fellowship Hall | "Community Center" |
| 2341 Edison Ave. | 055700-0000 | 1,700sqft Unoccupied Commercial Building | "Unoccupied Building" |
| 2351 Edison Ave. | 055701-0000 | 0.08acre Vacant Lot bordering Unoccupied Building | "Vacant Lot" |
| 0 Edison Ave. | 055704-0000 | 0.08acre Vacant Lot bordering Vacant Lot | "Vacant Lot" |
| 7155 Hyde Grove Ave. | 010403-0000 | 3,900sqft Single Family Residence provided for Clergy | "Parsonage" |

The Debtor was founded in 1985 with a congregation of just sixty (60) members which

grew to over 125 members by the end of the Debtor's first year. Shortly after formation the

Debtor began leasing the Sanctuary with an option to purchase from the then current owner, the

United Methodist Church. The Debtor chose the Sanctuary, which is located near the

intersections of Edison Avenue and Stockton Street on Jacksonville's Westside, due to the area's

need for community support and improvement, the requests of local residents for a religious center and the availability of a purpose built Sanctuary. The Debtor fully satisfied their option to purchase and became owners of the Sanctuary in 1992.

Between 1992 and 2005 the Debtor continued to grow its congregation and services to the surrounding community. By acquiring secured loans and bonds the Debtor was able to fully renovate and repair the Sanctuary which was constructed in 1922.

The Debtor's involvement and charitable support to the community was essential to the surrounding community which experienced a prolonged economic and social downturn in the late 90s and early 2000s. As neighboring businesses closed, jobs left the area and local residents either left or could no longer afford their homes the Debtor's charity provided many families with the support and care they desperately needed.

In 1993 the Debtor began its involvement with the Epworth Christian Retreat for Kids, a yearly retreat to St. Simons Island Georgia. The Debtor sponsors members of its own congregation as well as nonmembers in the surrounding community as an opportunity for underprivileged and at risk children. The Debtor has continued this community outreach for nineteen (19) consecutive years.

In addition, the Debtor has also held hot lunch programs for needy families in the communities in connection with the City of Jacksonville and the Food Bank of Jacksonville. In 2004, prior to the opening of the Jacksonville homeless shelter, the Debtor converted the Sunday School Expansion to a homeless shelter providing food, clothing and a safe environment for those in need. The Debtor has also provided after school tutoring during the week in the Sunday School in additional to regular bible study after services and since 2003 the Debtor has been a polling location for local and national elections. The Debtor has used its Community Center for

summer camps and activities with the goal of providing the community's youth with an social and creative outlet during the non-school months. The Debtor has provided all of the above services and contributions to the community without the aid of grant or donations outside of those provided by its congregation which had grown to over 270 members by 2001.

As the Debtor expanded its community outreach and congregation, it also began acquiring properties to support and service the needs of its congregation and surrounding community. In addition to purchasing the Sunday School , Sunday School Expansion and Community Center which were put to immediate use, the Debtor also purchased the neighboring Unoccupied Building and two Vacant Lots as they became available through tax sales and foreclosures for use in future expansions. In 2001, the Debtor was able to purchase the Parsonage in order to supply its full time clergy with a place of residence.

### B. Reasons for Filing Bankruptcy

In 2006, the Debtor's current bonding which had been secured by the Sanctuary, Sunday School, Sunday School Expansion, Community Center and Parsonage was reaching maturity. The Debtor obtained 3year short term financing from Working Capital #1, LLC ("Working Capital") to finance the related properties with the goal of refinancing to a long-term loan prior to the 3year balloon payment. The Debtor raised $90,000.00 through its congregation and other loans as the required down payment to the Working Capital refinance. Unfortunately, the current economic recession, and severe drop in property values nationwide, made refinancing prior to the 2009 Working Capital maturity impossible. The recession's impact did not affect the Debtor through falling property values alone. As the economy worsened, and the income of the debtor's congregation decreased, donations and tithing also dropped. By 2011 the Debtor's congregation has fallen to just 150 members.

7

Between 2009 and 2010 the Debtor continued to seek and apply for refinancing of Working Capital's loan. In 2010, the Debtor was introduced to certain individuals purporting themselves to be legal and foreclosure experts, who convinced the Debtor to deed all of the Properties into an out of state trust to assist in defending against Working Capital's foreclosure. The Debtor also provided approximately $7,000.00 worth of assets to these individuals for the purpose representing the Debtor in regards to Working Capital and funding the legal fees and costs in negotiating and restructuring the Debtor's loan with Working Capital. It is believed that these individuals never made or attempted to make contact with Working Capital, who filed a foreclosure action in late 2011 (Duval County Case No.:2011-CA-8074).

As Working Capital's foreclosure action proceeded, the Debtor realized that these individuals were not providing the legal and representative services that was promised. The Debtor conferred with local legal counsel who was able to manage the return the Debtor's ownership status of the Properties in early 2012. Debtor retained local bankruptcy counsel and filed for Chapter 11 relief in March of 2012.

### C. Actions taken since filing the Chapter 11

#### <u>Employment of Professionals</u>

Debtor filed its voluntary petition on March 7, 2012. Debtor decided to hire William McDaniel with the Bankruptcy Law Firm of Lansing J. Roy, P.A. (the "Law Firm") as its attorney in the Chapter 11 case. On March 16, 2012, Debtor filed its application to employ the Law Firm. The Court issued its Order Approving Application to employ the Law Firm on March 21, 2012. The Law Firm's compensation will be subject to the Court's review for reasonableness under 11 U.S.C. § 330.

### D. Insider Relationships

As a nonprofit organization, the Debtor has no equity holders. The Debtor has the following officers and directors:

      a. Pastor Elwyn W. Jenkins, President & Pastor.

      b. Vivian B. Jenkins, Director.

      c. Eugene Moultrie, Treasurer. No salary or benefits, volunteer.

      d. Wanda McKinney, Vice Treasurer. No salary or benefits, volunteer.

      e. Lavern Cooper, Director. No salary or benefits, volunteer.

      f. Marva Salary, Director. No salary or benefits, volunteer.

      g. Margaret Givens, No salary or benefits, volunteer.

      h. Artemus Holley, No salary or benefits, volunteer.

Mr. and Mrs. Jenkins are the only officers/directors of the Debtor who are paid a salary by the Debtor. Mr. and Mrs. Jenkins' salaries and benefits were brought before the Court and approved on April 16, 2012 [Docket No.: 45]. Mr. and Mrs. Jenkins will not receive any distributions under the Plan. However, Mr. and Mrs. Jenkins will continue to be employed and compensated by the Debtor post-confirmation for their respective rolls as the Debtor's President & Pastor and Director.

### III. The Plan of Reorganization

### A. Introduction

The following is a summary of Debtor's Plan of Reorganization. This summary highlights the substantive provisions of the Plan but is not, nor is it intended to be, a complete description of the Plan. A complete copy of the Plan is enclosed with this document. Statements regarding projected amounts of claims or distributions are estimated by the Debtor based on

current information and are not a representation of the accuracy of these amounts. Any conflict between the following summary and the Plan itself shall be resolved by reference to the terms and provisions of the Plan, which shall govern.

**B. Classifications of Claims.**

The Plan establishes eight (8) classes of Claims:

**Class 1: Allowed Administrative Expenses.** All Allowed Administrative Expenses for which application is filed prior to the Effective Date, and owing at the time of confirmation, will be paid as a condition precedent to the Confirmation Order. The funds will come from operations. At the time of the preparation of this Plan, there are no post-petition obligations that have been incurred that are not being paid on a current basis. U.S. Trustee fees are being paid on a current basis. This class of claims is not impaired under the Plan.

**Class 2: Allowed Unsecured Claims.** Allowed Unsecured Claims total approximately $815,000.00. As more fully discussed in Section C below, if the Debtor's assets were liquidated, approximately $10,000.00 would be available for distributions to this class of creditors under a Chapter 7 administration. The Debtor proposes to pay this class of unsecured creditors $15,000.00, divided among all allowed Class 2 Claims according to their pro rata share of the total Class 2 allowed claim pool, with no interest. Attached as Exhibit "B" is a list of all Allowed Unsecured Claims. Payments shall be structured according to the following terms:

A: Allowed Unsecured Claims of $15,000.00 or less:

1. Allowed Unsecured Claims of $15,000.00 or less shall receive their pro rata distribution in one single lump sum payment.

2. This payment shall be due on the 5th day of the first month following the Effective Date.

3. The total distribution to the allowed unsecured claims of $15,000.00 or less shall be approximately $510.10.

B: Allowed Unsecured Claims of $15,000.01 or greater:

1. Allowed Unsecured Claims of $15,000.01 or greater shall receive their pro rata distribution under this class in twenty (20) equal quarterly payments.

2. Such payments shall commence on the fifth (5th) day of the first calendar quarter following the Effective date, and continue on the fifth (5th) day of each calendar quarter thereafter until the twenty (20) payments are completed.

3. The total amount of these combined quarterly payments to the allowed unsecured claims of $15,000.01 or greater shall be approximately $724.50 per quarter.

C: Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

D: The Debtor shall have the right to pre-pay this class of creditors, in full or in part, at any time without penalty.

This class of claims is impaired.

**Class 3:  Allowed Unsecured Priority Claim of the Internal Revenue Service.**  The Internal Revenue Service ("IRS") filed an unsecured priority claim of $3,438.20 (Claim #2-2).  The Debtor proposes to pay this class of creditors according to the following terms:

1. The Debtor will pay the IRS $3,438.20 in equal quarterly installments over five (5) years. The quarterly payment shall be approximately $171.91.

2. These payments shall begin on the fifth (5th) day of the first calendar quarter following the Effective date, and continue on the fifth (5th) day of each calendar quarter thereafter until the twenty (20) quarterly payments are made.

3. The Debtor shall have a thirty (30) day grace period for all payments.

4. The Debtor shall have the right to pre-pay this class of creditors, in full or in part, at any time without penalty.

This class of claims is impaired.

**Class 4:  Allowed Secured Claim of the Internal Revenue Service.**  The IRS filed a secured claim of $63,022.93 (Claim #2-2).  The Debtor proposes to pay this class of creditors according to the following terms:

1. The Debtor will pay the IRS $63,022.93 amortized over five (5) years at a fixed interest rate of three percent (3.00%) per annum.  The monthly payment shall be approximately $1,132.44.

2. The first payment shall be the fifth (5th) day of the first (1st) month following the Effective Date and continue on the fifth (5th) day of each month thereafter.

3. The Debtor shall have a thirty (30) day grace period for all payments.

4. The Debtor shall have the right to pre-pay this class of creditors, in full or in part, at any time without penalty.

This class of claims is impaired.

**Class 5:  Allowed Secured Claim of the Duval County Tax Collector.**  The Duval County Tax Collector ("Duval County") filed a secured claim stemming from nonpayment of real property taxes in the amount of $13,619.68 [Claim No.: 6-2].  The Debtor proposes to pay Duval County according to the following terms:

A:  The Debtor will pay Duval County $13,619.68 amortized over five (5) years at the applicable rate of interest for each tax certificate/bill.  The monthly payment shall be approximately $276.32.

D:  The first payment to Duval County shall be the fifth (5th) day of the first (1st) month following the Effective Date and continue on the fifth (5th) day of each month thereafter.

E:  The Debtor shall have the right to pre-pay this class of creditors, in full or in part, at any time without penalty.

F:  Debtor shall have a thirty (30) day grace period on all payments.

This class of claims is impaired.

**Class 6:  Allowed Secured Claims of PPF Holdings III Ltd.**  PPF Holdings III Ltd ("PPF") has filed secured claims totaling $486.32 stemming from its pre-petition purchase of property tax certificates on the Debtor's real property located at 7155 Hyde Grove Ave., Jacksonville, Florida [Claims No.: 8 & 9].  As PPF's certificate on the Hyde Grove property will be paid in full through Duval County as part of the full administration of Class 5, PPF's Claims No. 8 & 9 are duplicative.  Currently, there is a motion objecting to PPF's Claims No. 8 & 9 as duplicative.  As the Debtor is objecting to PPF's claims, PPF is not entitled to any distribution under Class 6 and thus is not entitled to a vote as a Class 6 creditor.

**Class 7:  Allowed Secured Claim of Henry D. Jr. and A.G. Ross.**  Debtor has scheduled Henry D. Jr. and A.G. Ross ("Ross") as holding a secured claim totaling $146,541.99 representing a first mortgage position pursuant to a mortgage recorded on May 31, 2006 (Duval County Book 13295, Page 2201) on the following real properties owned by the Debtor:

a.    0 Belfort St., Jacksonville, Florida, RE # 055704-0000;

b.    2351 Edison Ave., Jacksonville, Florida, RE # 055701-0000;

13

c.  2341 Edison Ave., Jacksonville, Florida, RE # 055700-0000 (collectively, the "Ross Properties").

The Debtor believes the combined value of the Ross Properties is $61,233.00, and has filed a separate Motion to Value with the Court. Debtor intends to retain the Ross Properties and proposes to pay Ross according to the following terms:

1.  The Debtor shall pay Ross the value of the Ross Properties, $61,233.00, as a secured mortgage amortized over fifteen (15) years at a fixed interest rate of four and one half percent (4.5%) per annum. The monthly payment shall be approximately $468.43.

2.  The unsecured portion of the Ross' claim, approximately $85,308.99, shall be entitled to treatment in Class 2 as an Allowed Unsecured Claim.

3.  The first payment to Ross shall be the fifth (5th) day of the first (1st) month following the Effective Date and continue on the fifth (5th) day of each month thereafter.

4.  The Debtor shall have a thirty (30) day grace period for all payments.

5.  The Debtor shall have the right to pre-pay this class of creditors, in full or in part, at any time without penalty.

6.  All other terms of the note and mortgage not amended herein shall remain in full force and effect.

This class of claims is impaired.

**Class 8: Allowed Secured Claim of Working Capital #1, LLC.** Working Capital #1, LLC ("Working Capital") filed a secured claim totaling $1,224,385.00 [Claim No.: 1] representing a pre-petition summary judgment of foreclosure. Pursuant to a mortgage recorded on August 15, 2006 (Duval County Book 13458, Page 780) Working Capital holds a first mortgage position on the following properties of the Debtor:

a.  2297 Edison Ave., Jacksonville, Florida, RE # 089712-0000;

b.  2294 Edison Ave., Jacksonville, Florida, RE # 089623-0000;

c.  2292 Edison Ave., Jacksonville, Florida, RE # 089612-0000;

d.  531 Osceola St., Jacksonville, Florida, RE # 089588-0000;

e.  7155 Hyde Grove Ave., Jacksonville, Florida, RE # 010403-0000;

f.  Working Capital also has a second mortgage on the Debtor's real property located at 0
    Belfort St., Jacksonville, Florida, RE # 055704-0000; behind the first mortgage of Ross.

(collectively, the "Working Capital Properties").

Debtor contends the total value of the Working Capital Properties is $549,650.00.  The Debtor intends to retain the Working Capital Properties and proposes to pay Working Capital according to the following terms:

1.  Working Capital shall retain, and Debtor shall pay, a $575,000.00 secured mortgage on
    the Working Capital Properties ("Working Capital's Secured Claim").

2.  Working Capital's Secured Claim shall be amortized over twelve (12) years at a fixed
    interest rate of six and one half percent (6.5%) per annum, and be paid in monthly
    principal and interest installments.  The monthly payments shall be approximately
    $5,761.05.

3.  The unsecured portion of Working Capital's claim (approximately $649,385.00) shall be
    included as an allowed general unsecured claim subject to administration under Class 2
    of the Plan.

4.  The first payment to Working Capital on their secured claim shall be the fifth (5th) day of
    the first (1st) month following the Effective Date and continue on the fifth (5th) day of
    each month thereafter.

5.  Nonpayment within thirty (30) days of the fifth (5th) day of the month shall be considered an event of default.

6.  The Debtor shall have a ten (10) day grace period for all payments before any late fees or penalties are assessed.

7.  The Debtor shall have the right to pre-pay this class of creditors, in full or in part, at any time without penalty.

8.  All other terms of the note and mortgage not amended herein shall remain in full force and effect.

This class of claims is impaired.

## B.  Effective Date of the Plan

The Plan provides that the Effective Date shall be the date on which the order confirming the Plan becomes final, which is fourteen (14) days after entry of the order of confirmation. Distributions will begin thirty (30) days after the Effective Date unless otherwise indicated above.

(the remainder of this page is intentionally left blank)

## C. Liquidation Analysis

As of July 31, 2012, the Debtor had the following assets:

| As of July 2012 MOR | | | | | |
|---|---|---|---|---|---|
| Asset | Retail Value | Liquidation Multiplier | Liquidated Value | Lien(s) | Net to Estate |
| Encumbered Real Property | $624,953.00 | 70% | $437,467.10 | $1,376,236.49 | $0.00 |
| Unencumbered Real Property | $15,308.00 | 70% | $10,715.60 | $0.00 | $10,715.60 |
| Bank Accounts | $4,481.02 | 0% | $4,481.02 | $0.00 | $4,481.02 |
| Possible Trust Recovery | $7,000.00 | 70% | $4,900.00 | $0.00 | $4,900.00 |
| Furnishings | $125,000.00 | 60% | $75,000.00 | $0.00 | $75,000.00 |
| Total Available to Estate: | | | | | $95,096.62 |
| Cost of CH7 Administration (20%): | | | | | -$19,019.32 |
| Priority Creditors (IRS): | | | | | -$66,461.13 |
| Total Available for General Unsecured Creditors: | | | | | $9,616.17 |

If the Debtor's Chapter 11 Plan is not confirmed, the Debtor will be forced to convert this case to a liquidation under Chapter 7. It is anticipated that after liquidation and satisfaction of secured creditors, there would be approximately $95,000.00 available for Chapter 7 administration. The Administrative Fees of the Chapter 7 administration (roughly 20%, or $19,000.00) and the secured and unsecured priority claims of the IRS (approximately $67,000.00) would be first satisfied in full, leaving only approximately $9,500.00 available for distribution to the general unsecured creditors of the estate.

The Debtor's Plan proposes to pay allowed priority claims in full with interest, secured creditors with interest and the general unsecured creditors a total of $15,000.00. Considering that liquidating would yield less that $10,000.00 for distribution to the general unsecured creditors and Debtor's Plan proposes to pay all secured creditors with interest, all priority claims and $15,000.00 to the unsecured creditors, creditors stand to receive more under the proposed

Plan than if the Debtor's assets were to be liquidated.

### D. Means of Execution of the Plan and Feasibility

The Plan provides for payments under the plan to be made from the proceeds received by

the Debtor through donations and the charitable contributions of the Debtor's congregation.  The

below chart outlines the Debtor's monthly operations since the Petition Date:

| Month | Gross Income | Expenses | Available for Additional Debt Service |
|---|---|---|---|
| Mar-12 | $18,312.99 | $12,359.39 | $5,953.60 |
| Apr-12 | $29,038.80 | $25,212.39 | $3,826.41 |
| May-12 | $13,109.82 | $16,504.69 | -$3,394.87 |
| Jun-12 | $19,414.05 | $18,669.18 | $744.87 |
| Jul-12 | $16,982.93 | $19,956.00 | -$2,973.07 |
| Averages: | $19,371.72 | $18,540.33 | $831.39 |

Under the Plan, the Debtor's debt service, averaged out monthly, will increase by

approximately $2,720.38[1].  Debtor's monthly operating reports for the last seven (7) months

show an average of $831.39 available for such an additional monthly debt service.

As a nonprofit religious organization, the Debtor does not retain profits for distributions

to officers, directors, or equity holders.  The Debtor's income is comprised of donations from its

congregation and the surrounding community.  The Debtor manages these funds, first using them

to satisfy its ongoing obligations and expenses, and commits the excess monthly contributions to

provide for its congregation and the support and wellbeing of the surrounding community.

Given the historical rate of the donations of the Debtor's congregation, the limited

ongoing expenses of the Debtor and the total amount of the Plan payments, Debtor will be able

to manage its finances and stay current on both its ongoing and Plan obligations while still

providing, albeit more limited, charitable contributions to the Debtor's congregation and

---

[1] This figure is arrived by taking the monthly average of Plan payments ($7,937.04) less monthly averaged amounts currently paid by the debtor for adequate protection and US Trustee fees ($5,216.66).

community in need. Further, by retaining the Debtor's Properties, the Debtor possesses the infrastructure to expand its services thus allowing it to increase its congregation which directly correlates to increases in donations and tithing. The Debtor believes, in light of the above, the Debtor's Plan is feasible and not likely to be followed by further reorganization or liquidation.

### E. Post Confirmation Management

Following confirmation, the Debtor's current board members will continue in their respective rolls. While the Debtor's board may change in the future, there are currently no changes being contemplated. Mr. and Mrs. Jenkins will continue in their respective rolls as the Debtor's President & Pastor and  Director. Mr. and Mrs. Jenkins shall continue to be compensated for their services to the Debtor, and such compensation may change in the future.

### F. Claims resolution and Distributions.

In order for the holder of a Claim to receive the treatment offered to the class in which it is classified, the Claim must be Allowed. An Allowed Claim is defined in the Plan. All Claims scheduled by the Debtor which are disputed, contingent, unliquidated as to amount, and for which no proof of claim is filed by the bar date as set by the Bankruptcy Court, will be extinguished. Furthermore, any proof of claim filed after the bar date will be extinguished under the terms of the Plan unless otherwise provided by order of the Court. The Debtor or any other party in interest desiring to file objections to proofs of claim may file objections to the allowance of the Claims to the extent they deem such objection is warranted.

Claims listed in the schedules filed by the Debtor not identified as either disputed, contingent, or unliquidated and for which no proof of claims have been filed on or before the bar date, will be treated as Allowed Claims unless the scheduled amounts are properly amended or objections are filed to the amounts set forth in the schedules. Proofs of claims for which no

19

objection is filed by the deadline in the Plan or such other date set by order of the Court will, in the Debtor's discretion, be deemed Allowed Claims in the amounts set forth in the proofs of claim filed with the Court.

All distributions shall be made in cash, by check drawn on a domestic bank or by wire transfer from a domestic bank at the option of the Debtor.

### G. Miscellaneous.

Prior to the Confirmation Date, the Debtor may, with the approval of the Court and without notice to or consent of any holders of Claims, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent as may be necessary to expedite the execution of the Plan. The Plan may be altered or amended after the Confirmation Date and before the distribution date only as provided in 11 U.S.C. § 1127.

From the Confirmation Date to the Effective Date, the Bankruptcy Court shall retain full jurisdiction of the Chapter 11 case notwithstanding that confirmation of the Plan has occurred by entry of the Confirmation Order.

### II. Alternatives to Confirmation of the Plan.

If the Plan is not confirmed, the following alternatives could occur:

1.    Conversion to Chapter 7. The Debtor's Chapter 11 bankruptcy case may be converted to Chapter 7. A trustee would then be appointed by the Bankruptcy Court to liquidate the Debtor's assets for distribution to Creditors in accordance with priorities established by the Bankruptcy Code. However, Debtor believes that the Creditors will receive more under the Plan than if the case was converted to Chapter 7.

2.    <u>Dismissal</u>.  The Debtor's Chapter 11 bankruptcy case would be dismissed thus restoring the status quo prior to the Petition Date.  However, Debtor will not have sufficient funds to service the debt outside the Chapter 11.

**III. Conclusion**

For the reasons set forth above, Debtor urges all holders of claims which are or may be impaired under the Plan to vote to accept the Plan and to demonstrate this acceptance by timely returning their ballots according to the instructions received with the ballot.  In Debtor's opinion, the Plan is preferable to all other alternatives in that it provides the best available opportunity to maximize the potential for the largest possible payment of all claims against the Debtor.

(signature page follows)

Dated this 28th day of August 2012

Tru-Way Church of the Risen
Christ, Incorporated

Elwyn W. Jenkins, President


BANKRUPTCY LAW FIRM OF
LANSING J. ROY, P.A.

/s/ William B. McDaniel
Kevin B. Paysinger, Esquire
Florida Bar No. 0056742
Christopher R. DeMetros, Esquire
Florida Dar No. 0863467
William B. McDaniel, Esquire
Florida Bar No. 0084469
Attorney for Debtor
1710 Shadowood Lane, Suite 210
Jacksonville, FL 32207
(904) 391-0030

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRU-WAY CHURCH OF THE | ) | |
| RISEN CHRIST, INCORPORATED | ) | CASE NO. 12-bk-1498-JAF |
| | ) | CHAPTER 11 |
| _____ Debtor | ) | |

## DEBTOR'S PLAN OF REORGANIZATION

**TRU-WAY CHURCH OF THE RISEN CHRIST, INCORPORATED**, as Debtor and

Debtor-in-Possession, proposes the following Plan of Reorganization.

## ARTICLE 1
## DEFINITIONS

1.1.    **"ADMINISTRATIVE EXPENSE"** shall mean any cost or expense of

administration of the Chapter 11 case allowed under Sections 503(b) and 507(a)(1) of the

Bankruptcy Code.

1.2.    **"ALLOWED"** shall mean any such Claim, proof of which was timely and properly

filed or, if no proof of claim was filed, which has been or hereafter is listed by the Debtors on

their schedules as liquidated in amount and not disputed or contingent, and, in either case, a

Claim as to which no objection to the allowance thereof has been filed on or before the

Confirmation Date or such other applicable period of limitation fixed by the Plan.  Unless

otherwise specified herein or by order of the Court, an "Allowed Claim" shall not, for purposes

of computation or distributions under the Plan, include interest on such Claim for the period from

and after the Petition Date.

1.3.    **"BANKRUPTCY CODE"** shall mean Title 11 of the United States Code.

1

EXHIBIT A

1.4.    **"CLAIM"** shall mean a duly listed or timely filed claim which is Allowed and ordered paid by the Court.

1.5.    **"CONFIRMATION DATE"** means the date on which the Court shall enter the Confirmation Order.

1.6.    **"COURT"** shall mean the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

1.7.    **"CREDITORS"** shall mean all creditors of Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

1.8.    **"DEBTOR"** shall mean Tru-Way Church of the Risen Christ, Incorporated.

1.9.    **"EFFECTIVE DATE"** shall be that date on which the order confirming the Plan becomes final, which is fourteen (14) days after the entry of the order confirming the Plan.

1.10.    **"PETITION DATE"** shall mean March 7, 2012, the date on which the Chapter 11 case was filed.

1.11.    **"PLAN"** shall mean this Plan of Reorganization in its present form or as it may be amended or supplemented.

1.12.    **"SECURED CREDITORS"** shall mean all creditors who hold a lien, security interest, or other encumbrance properly perfected as required by law with respect to property owned by Debtor.

## ARTICLE 2
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

2.1.    **Summary.** The categories of Claims and interests listed below are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan:

Class 1:        Allowed Administrative Expenses

2

Class 2:          Allowed Unsecured Claims

Class 3:          Allowed Unsecured Priority Claim of the Internal Revenue Service

Class 4:          Allowed Secured Claim of the Internal Revenue Service

Class 5:          Allowed Secured Claim of the Duval County Tax Collector

Class 6:          Allowed Secured Claims of PPF Holdings III Ltd.

Class 7:          Allowed Secured Claim of Henry D. Jr. and A.G. Ross

Class 8:          Allowed Secured Claim of Working Capital #1, LLC

2.2.    **Class 1: Allowed Administrative Expenses.**

2.2.1.  All Allowed Administrative Expenses for which application is filed prior to the

Effective Date, and owing at the time of confirmation, will be paid as a condition

precedent to the Confirmation Order.  The funds will come from operations.  At the

time of the preparation of this Plan, there are no post-petition obligations that have

been incurred that are not being paid on a current basis.  U.S. Trustee fees are being

paid on a current basis.  This class of claims is not impaired under the Plan.

2.3.    **Class 2: Allowed Unsecured Claims.**

2.3.1.  Allowed Unsecured Claims total approximately $815,000.00.  The Debtor

proposes to pay this class of unsecured creditors $15,000.00, divided among all

Allowed Unsecured Claims according to their pro rata share of the total Class 2

Allowed Claim pool, with no interest.  Payments shall be structured according to the

following terms:

2.3.1.1. Allowed Unsecured Claims of $15,000.00 or less:

2.3.1.1.1.    Allowed Unsecured Claims of $15,000.00 or less shall receive their

pro rata distribution in one single lump sum payment.

3

2.3.1.1.2.   This payment shall be due on the 5th day of the first month following the Effective Date.

2.3.1.1.3.   The total distribution to the allowed unsecured claims of $15,000.00 or less shall be approximately $510.10.

2.3.1.2. Allowed Unsecured Claims of $15,000.01 or greater:

2.3.1.2.1.   Allowed Unsecured Claims of $15,000.01 or greater shall receive their pro rata distribution under this class in twenty (20) equal quarterly payments.

2.3.1.2.2.   Such payments shall commence on the fifth (5th) day of the first calendar quarter following the Effective date, and continue on the fifth (5th) day of each calendar quarter thereafter until the twenty (20) payments are completed.

2.3.1.2.3.   The total amount of these combined quarterly payments to the allowed unsecured claims of $15,000.01 or greater shall be approximately $724.50 per quarter.

2.3.2.   Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

2.3.3.   Debtor shall have the right to pre-pay this class of creditors, in full or in part, at any time without penalty.

2.3.4.   This class of claims is impaired.

4

2.4.    **Class 3: Allowed Priority Claim of the Internal Revenue Service.**

    2.4.1.   The Internal Revenue Service ("IRS") filed an unsecured priority claim of

        $3,438.20 (Claim #2-2).  The Debtor proposes to pay this class of creditors

        according to the following terms:

        2.4.1.1.The Debtor will pay the IRS $3,438.20 in equal quarterly installments over

            five (5) years.  The quarterly payment shall be approximately $171.91.

        2.4.1.2.These payments shall begin on the fifth (5th) day of the first calendar quarter

            following the Effective date, and continue on the fifth (5th) day of each

            calendar quarter thereafter until the twenty (20) quarterly payments are made.

        2.4.1.3.The Debtor shall have a thirty (30) day grace period for all payments.

        2.4.1.4.The Debtor shall have the right to pre-pay this class of creditors, in full or in

            part, at any time without penalty.

    2.4.2.   This class of claims is impaired.

2.5.    **Class 4: Allowed Secured Claim of the Internal Revenue Service**

    2.5.1.   The IRS filed a secured claim of $63,022.93 (Claim #2-2).  The Debtor proposes

        to pay this class of creditors according to the following terms:

        2.5.1.1.The Debtor will pay the IRS $63,022.93 amortized over five (5) years at a

            fixed interest rate of three percent (3.00%) per annum.  The monthly payment

            shall be approximately $1,132.44.

        2.5.1.2.The first payment shall be the fifth (5th) day of the first (1st) month following

            the Effective Date and continue on the fifth (5th) day of each month thereafter.

        2.5.1.3.The Debtor shall have a thirty (30) day grace period for all payments.

5

2.5.1.4. The Debtor shall have the right to pre-pay this class of creditors, in full or in part, at any time without penalty.

    2.5.2.   This class of claims is impaired.

2.6.    **Class 5: Allowed Secured Claim of the Duval County Tax Collector**

    2.6.1.   The Duval County Tax Collector ("Duval County") filed a secured claim stemming from nonpayment of real property taxes in the amount of $13,619.68 [Claim No.: 6-2]. The Debtor proposes to pay Duval County according to the following terms:

2.6.1.1. The Debtor will pay Duval County $13,619.68 amortized over five (5) years at the applicable rate of interest for each tax certificate/bill. The monthly payment shall be approximately $276.32.

2.6.1.2. The first payment to Duval County shall be the fifth (5th) day of the first (1st) month following the Effective Date and continue on the fifth (5th) day of each month thereafter.

2.6.1.3. The Debtor shall have the right to pre-pay this class of creditors, in full or in part, at any time without penalty.

2.6.1.4. Debtor shall have a thirty (30) day grace period on all payments.

    2.6.2.   This class of claims is impaired.

2.7.    **Class 6: Allowed Secured Claims of PPF Holdings III Ltd.**

    2.7.1.   PPF Holdings III Ltd ("PPF") has filed secured claims totaling $486.32 stemming from its pre-petition purchase of property tax certificates on the Debtor's real property located at 7155 Hyde Grove Ave., Jacksonville, Florida [Claims No.: 8 & 9]. As PPF's certificate on the Hyde Grove property will be paid in full through

6

Duval County as part of the full administration of Class 5, PPF's Claims No. 8 & 9 are duplicative. Currently, there is a motion objecting to PPF's Claims No. 8 & 9 as duplicative. As the Debtor is objecting to PPF's claims, PPF is not entitled to any distribution under Class 6 and thus is not entitled to a vote as a Class 6 creditor.

2.8.    **Class 7: Allowed Secured Claim of Henry D. Jr. and A.G. Ross**

2.8.1.    Debtor has scheduled Henry D. Jr. and A.G. Ross ("Ross") as holding a secured claim totaling $146,541.99 representing a first mortgage position pursuant to a mortgage recorded on May 31, 2006 (Duval County Book 13295, Page 2201) on the following real properties owned by the Debtor:

2.8.1.1.0 Belfort St., Jacksonville, Florida, RE # 055704-0000;

2.8.1.2.2351 Edison Ave., Jacksonville, Florida, RE # 055701-0000;

2.8.1.3.2341 Edison Ave., Jacksonville, Florida, RE # 055700-0000 (collectively, the "Ross Properties").

2.8.2.    The Debtor believes the combined value of the Ross Properties is $61,233.00, and has filed a separate Motion to Value with the Court. Debtor intends to retain the Ross Properties and proposes to pay Ross according to the following terms:

2.8.2.1.The Debtor shall pay Ross the value of the Ross Properties, $61,233.00, as a secured mortgage amortized over fifteen (15) years at a fixed interest rate of four and one half percent (4.5%) per annum. The monthly payment shall be approximately $468.43.

2.8.2.2.The unsecured portion of the Ross' claim, approximately $85,308.99, shall be entitled to treatment in Class 2 as an Allowed Unsecured Claim.

2.8.2.3. The first payment to Ross shall be the fifth (5th) day of the first (1st) month

following the Effective Date and continue on the fifth (5th) day of each month

thereafter.

2.8.2.4. The Debtor shall have a thirty (30) day grace period for all payments.

2.8.2.5. The Debtor shall have the right to pre-pay this class of creditors, in full or in

part, at any time without penalty.

2.8.2.6. All other terms of the note and mortgage not amended herein shall remain in

full force and effect.

2.8.3.  This class of claims is impaired.

2.9.  **Class 8:  Allowed Secured Claim of Working Capital #1, LLC**

2.9.1.  Working Capital #1, LLC ("Working Capital") filed a secured claim totaling

$1,224,385.00 [Claim No.: 1] representing a pre-petition summary judgment of

foreclosure.  Pursuant to a mortgage recorded on August 15, 2006 (Duval County

Book 13458, Page 780) Working Capital holds a first mortgage position on the

following properties of the Debtor:

2.9.1.1.  2297 Edison Ave., Jacksonville, Florida, RE # 089712-0000;

2.9.1.2.  2294 Edison Ave., Jacksonville, Florida, RE # 089623-0000;

2.9.1.3.  2292 Edison Ave., Jacksonville, Florida, RE # 089612-0000;

2.9.1.4.  531 Osceola St., Jacksonville, Florida, RE # 089588-0000;

2.9.1.5.  7155 Hyde Grove Ave., Jacksonville, Florida, RE # 010403-0000;

2.9.1.6.  Working Capital also has a second mortgage on the Debtor's real property

located at 0 Belfort St., Jacksonville, Florida, RE # 055704-0000; behind the

first mortgage of Ross.  (collectively, the "Working Capital Properties").

2.9.2.    Debtor contends the total value of the Working Capital Properties is $549,650.00.
The Debtor intends to retain the Working Capital Properties and proposes to pay
Working Capital according to the following terms:

2.9.2.1. Working Capital shall retain, and Debtor shall pay, a $575,000.00 secured
mortgage on the Working Capital Properties ("Working Capital's Secured
Claim").

2.9.2.2. Working Capital's Secured Claim shall be amortized over twelve (12) years at
a fixed interest rate of six and one half percent (6.5%) per annum, and be paid
in monthly principal and interest installments. The monthly payments shall be
approximately $5,761.05.

2.9.2.3. The unsecured portion of Working Capital's claim (approximately
$649,385.00) shall be included as an allowed general unsecured claim subject
to administration under Class 2 of the Plan.

2.9.2.4. The first payment to Working Capital on their secured claim shall be the fifth
(5th) day of the first (1st) month following the Effective Date and continue on
the fifth (5th) day of each month thereafter.

2.9.2.5. Nonpayment within thirty (30) days of the fifth (5th) day of the month shall be
considered an event of default.

2.9.2.6. The Debtor shall have a ten (10) day grace period for all payments before any
late fees or penalties are assessed.

2.9.2.7. The Debtor shall have the right to pre-pay this class of creditors, in full or in
part, at any time without penalty.

9

2.9.2.8.All other terms of the note and mortgage not amended herein shall remain in

full force and effect.

2.9.3.   This class of claims is impaired.

### ARTICLE 3
### MEANS FOR EXECUTION OF THE PLAN

3.1.   In order to provide adequate means for the Plan's execution the Debtor proposes:

(a) Continuation and restructuring of the Debtor's financial affairs.

(b) Curing or waiving any defaults.

(c) Extension of a maturity date or change in an interest rate or outstanding securities.

(d) Retention by the Debtor of all estate property.

(e) All payments called for by the Plan irrespective of the class of creditor will have a

thirty (30) day grace period unless otherwise provided for in the Plan.

(f) Any debt that arose before the date of confirmation and any debt within the

parameters of 11 U.S.C. §1141(d)(1) will be discharged to the extent not provided for in the Plan

or in the Order of Confirmation.

3.2.   All claims and causes of action in favor of the Debtor are hereby reserved and

retained to be prosecuted before and after confirmation and the Debtor expressly reserves any

rights and powers that the Debtor may enjoy as the debtor-in-possession to be utilized after

confirmation.

3.3.   (a) Pursuant to 11 U.S.C. §1141(a) all of the provisions of this Plan will bind all

creditors of the Debtor, whether or not the claims or interests of such creditor is impaired under

this Plan and whether or not such creditor has accepted this Plan.

(b) Except as otherwise provided in the Plan or in the Order Confirming the Plan, the

confirmation of the Plan vests all of the property of the estate in the Debtor.

10

(c) Except as provided in subsection 11 U.S.C. §1141(d)(2) and (d)(3) and as otherwise provided in the Plan or in the Order Confirming the Plan, after confirmation of the Plan the property dealt with by this Plan shall be free and clear of all claims and interests of creditors, whether such claims are in the nature of consensual liens or involuntary liens, including judgment liens.

(d) Pursuant to 11 U.S.C. §1141(d)(1), the confirmation of this Plan shall discharge the Debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in §502(g), §502(h), or §502(i) of this Title whether or not a proof of the claim based on such debt is filed or deemed filed under §501 of this Title, such claim is allowed under §502 of this Title, or the holder of such claim has accepted the Plan.

**ARTICLE 4**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Debtor is unaware of the existence of any unexpired leases or executory contracts and hereby does not assume any unexpired leases or executory contracts.

(signature page follows)

Dated this 28ᵗʰ day of August 2012

Tru-Way Church of the Risen
Christ, Incorporated

Elwyn W. Jenkins, President


BANKRUPTCY LAW FIRM OF
LANSING J. ROY, P.A.

/s/ William B. McDaniel
Kevin B. Paysinger, Esquire
Florida Bar No. 0056742
Christopher R. DeMetros, Esquire
Florida Dar No. 0863467
William B. McDaniel, Esquire
Florida Bar No. 0084469
Attorney for Debtor
1710 Shadowood Lane, Suite 210
Jacksonville, FL 32207
(904) 391-0030

12

**Tru-Way Church**
**12-1498-JAF**

## Allowed Unsecured Claims

| Unsecured Claims Less than $15,000.00 | Claim # | Total Unsecured |
|---|---|---|
| Internal Revenue Service | 2-2 | $10,156.38 |
| Teco Peoples Gas | 3 | $584.47 |
| McVeigh & Magnum, Inc. | 4 | $6,227.14 |
| ADT Security Services | 5 | $1,882.55 |
| JEA | 7 | $392.25 |
| Advanced Disposal | | $273.32 |
| CMI Credit Mediators Inc | | $5,633.67 |
| MAC Tec Pro Computers | | $668.00 |
| RJM Acquisitions | | $656.36 |
| Jessie Sherman | | $1,000.00 |
| Thigpen Heating and Cooling | | $222.00 |
| | | |
| **Unsecured Claims Greater than $15,000.01** | **Claim #** | **Total Unsecured** |
| Working Capital (unsecured portion) | | $649,385.00 |
| Marva Salary | | $52,050.00 |
| Ross (unssecured portion) | | $85,308.99 |
| | | **$814,440.13** |

EXHIBIT B